CASTRO COUNTY, TEXAS, Appellee,

v.

Joe CRESPIN, Appellant.

Nos. 95–5141, 95–5183.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1996.

Decided Dec. 6, 1996.

Judith A. Sanders–Castro, San Antonio, argued the cause for appellant, with whom José Garza was on the briefs.

Paul J. Zidlicky, Washington, DC, argued the cause for appellee, with whom Carter G. Phillips was on the brief. Mark D. Hopson entered an appearance.

Before: EDWARDS, Chief Judge, WALD, Circuit Judge, and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Appellant Crespin appeals from the decision of a three-judge District Court denying his "motion to reopen" to file for attorneys' fees under the fee-shifting provision of the Voting Rights Act, 42 U.S.C. § 1973*l*(e) (1994), pursuant to which fees are awarded to "the prevailing party."

Appellant intervened on behalf of defendant United States in an action brought by Castro County under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c (1994), to get preclearance of a redistricting plan. On April 13, 1994, following a request by the parties, the District Court delayed final disposition of the matter to allow the parties time to pursue settlement negotiations. The court dismissed the action without prejudice, but gave the parties thirty days within which to file a motion to reopen; if no such motion was filed within thirty days, the case would be dismissed with prejudice. Subsequently, after Castro County sought additional time, the District Court issued an order extending the time for the filing of a motion to reopen to June 29, 1994. On June 28, 1994 Crespin filed a "motion to reopen" solely for the purpose of seeking attorneys' fees. This motion in effect requested permission to file a complete application for attorneys' fees under Federal Rule of Civil Procedure 54(d)(2)(B). The District Court denied appellant's motion, mainly because the court found that, under Rule 54(d)(2)(B), any application for fees should have been filed within fourteen days of the April 13, 1994 order.

The appellant now challenges the District Court's refusal to entertain a request for fees. In particular, appellant claims that a fee request could not have been filed within fourteen days of April 13, 1994, because the District Court's order of that date was not a final appealable order. Appellant also points out that there was no way to assess fees until after June 29, 1994, when the case on the merits was concluded. We agree with appellant's contentions and reverse the judgment of the District Court.

First, we find that we have jurisdiction to hear appellant's claim. Although section 5 indicates that "any appeal" shall be made directly to the Supreme Court, 42 U.S.C. § 1973c, case law and sound policy dictate that appeals on attorneys' fees emanating from actions under section 5 are made to the federal courts of appeals. Second, we find that appellant Crespin has standing to pursue his claim, because he has demonstrated injury-in-fact, causation, and redressability with regard to the question of attorneys' fees. Finally, on the merits, we find that the District Court erred in denying Crespin's June 28, 1994 motion requesting permission to file an application for fees. Appellant reasonably concluded that, in light of the April 13, 1994 order, as amended, the District Court would not entertain anything further from the parties absent a motion to reopen filed before June 29, 1994. Furthermore, the decision of the District Court holding that appellant was required to file any motion for fees within fourteen days of the April 13, 1994 order was simply wrong. The case on the merits did not conclude until June 29, 1994. Before that time, both the parties' status and the amount of fees incurred remained uncertain, making it impossible for the District Court to rule on any motion for fees under 42 U.S.C. § 1973*l*(e). We, therefore, reverse the judgment of the District Court and remand to allow appellant to file a complete motion for fees.

I. BACKGROUND

A. *Section 5 Complaint*

Castro County is a small county located in western Texas governed by a Commissioners Court that consists of five members: a County Judge (elected county-wide) and four Commissioners (elected from the four individual precincts within the county). According to the 1990 Census, Castro County has an Hispanic population of 46.16%. *Cited in* Brief of Appellee Castro County, Texas at 4. No Hispanic person had ever been elected to the Commissioners Court, however. Following the 1990 census, Castro County conclud-

ed that the four Commissioner precincts were malapportioned under the one-person one-vote standard. Castro County then aimed to reconfigure its precincts.

On February 8, 1993, after two unsuccessful attempts at administrative preclearance by the Department of Justice, the Castro County Commissioners Court adopted a redistricting plan ("1993 Plan"). The 1993 Plan contained two majority Hispanic precincts. On May 10, 1993, the Assistant Attorney General objected to Castro County's 1993 Plan. On August 25, 1993, Castro County filed a complaint under section 5 of the Voting Rights Act, 42 U.S.C. § 1973(c), seeking judicial preclearance of the redistricting plan, setting into motion the events that led to this law suit.

Castro County's motion for a three-judge panel was granted on August 31, 1993. In December of 1993, the District Court granted Joe Crespin leave to intervene as a defendant. At the time, Crespin was represented by four Mexican American Legal Defense and Educational Fund ("MALDEF") attorneys from San Antonio, one MALDEF attorney from Washington, D.C., and one attorney from the law firm of Gray & Becker.

On April 8, 1994, after the defendant and the intervenor had engaged in months of discovery, the parties filed a joint motion to stay the proceedings pending settlement discussions, subject to the right to reopen. On April 13, 1994, in response to the motion to stay, the District Court dismissed the case without prejudice to be dismissed with prejudice unless the parties filed a motion to reopen by May 13, 1994. *See Castro County, Texas v. United States,* Civ. No. 93–1782 (D.D.C. Apr. 13, 1994), *reprinted in* Appendix ("App.") D (all appendix cites refer to appellant Crespin's submission). The District Court's order read as follows:

> ORDERED that the above-entitled cause shall be, and hereby is, DISMISSED, without prejudice, from the docket of this Court, without costs to any party; and that any of the parties may reopen this case on or before 4:00 p.m. on May 13, 1994, should the case not be settled. Any party wishing to reopen this case under the above condition may do so upon oral application to the Courtroom Deputy Clerk, Mr. Joseph E. Burgess, ((202) 273–0553); absent such a request to reopen this case on or before May 13, 1994, the above-captioned case shall stand dismissed, with prejudice.

*Id.* Subsequently, pursuant to a motion by Castro County, the District Court extended the time in which to reopen to June 29, 1994.

### B. Crespin's "Motion to Reopen"

On June 28, 1994, Crespin filed a document entitled a "motion to reopen" that requested only permission to seek attorneys' fees. One day later, the Attorney General precleared a newly agreed-upon redistricting plan for Castro County, thus concluding the section 5 action. A month later, on July 29, 1994, the District Court denied Crespin's "motion to reopen." *See Castro County, Texas v. United States,* Civ. No. 93–1782 (D.D.C. July 29, 1994), *reprinted in* App. C. The District Court ruled: (i) Crespin gave no reason why the case needed to be reopened for the court to assess attorneys' fees, and (ii) even if his motion to reopen were construed as a Federal Rule of Civil Procedure 54(d)(2)(B) motion for fees, it did not meet the requirements of that Rule because, *inter alia,* it was not filed within fourteen days of the April 13, 1994 order and did not estimate the amount of fees sought. *See id.* at 2–3, *reprinted in* App. C.

### C. Crespin's Motion for Reconsideration and for Relief from Judgment/MALDEF's Motion for Intervention

On August 8, 1994, Crespin filed a motion under Federal Rule of Civil Procedure 60(b) seeking reconsideration of the District Court's July 29, 1994 judgment. On November 9, 1994, MALDEF filed a motion to intervene on the issue of attorneys' fees, stating that Crespin had discharged MALDEF as his counsel. On April 12, 1995, the District Court denied the motion for reconsideration as moot. The panel concluded that, by discharging MALDEF as his counsel, Crespin appeared to have abandoned his interest in attorneys' fees. The panel further concluded that, even if the motion for reconsideration were not moot, Crespin would not be entitled to relief pursuant to

Rule 60(b) because claims for attorneys' fees are not the type of actions that would justify relief under Rule 60(b). In a footnote, the panel denied as untimely MALDEF's motion to intervene. *See Castro County, Texas v. United States,* Civ. No. 93–1782 (D.D.C. Apr. 12, 1995), *reprinted in* App. B. Both Crespin and MALDEF appealed to this court the District Court's orders denying the motions to reopen and for reconsideration/intervention.

### D. *Castro County's Motion to Dismiss*

In response to the appeals to this court, Castro County moved to dismiss on the ground that appeals from three-judge orders in Voting Rights Act cases lie directly to the Supreme Court. A motions panel referred the motion to dismiss to a merits panel and instructed the parties to brief the issue.

## II. ANALYSIS

### A. *This Court's Jurisdiction to Hear Appeals on the Issue of Attorneys' Fees in Voting Rights Cases*

■ Castro County brought this case to a three-judge panel under section 5 of the Voting Rights Act, which governs actions by states and their political subdivisions for judicial preclearance of changes in voting qualifications or procedures to ensure such changes do not deny or abridge voting rights. *See* 42 U.S.C. § 1973(c). This provision states that "[a]ny action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court." *Id.* Castro County suggests that, following the language of the statute, this court lacks jurisdiction to hear "any appeal" from the decision of a three-judge panel.

We find that the "any appeal" language of 42 U.S.C. § 1973(c) does not apply to this appeal, which raises only an issue of attorneys' fees that in no way affects the disposition on the merits of the section 5 action. There are two justifications for this holding: First, case law from both the Supreme Court itself and other circuits indicates that jurisdiction over an appeal from the determina-

tion of a three-judge panel on the issue of attorneys' fees lies with the federal courts of appeals. Second, the policy concerns militating in favor of direct appeal to the Supreme Court in cases involving substantive determinations under 42 U.S.C. § 1973(c) do not apply in cases concerned solely with attorneys' fees.

#### 1. *Case Law*

Judgments from the Supreme Court and case law from this and other circuits indicate that jurisdiction lies in the courts of appeals, not the Supreme Court, in appeals involving attorneys' fee claims emanating from Voting Rights Act cases. Although the Supreme Court has not explicitly addressed the question, the matter was squarely before the Court in *Franklin v. Lawrimore,* —— U.S. ——, 116 S.Ct. 42, 133 L.Ed.2d 9 (1995) (mem.). In *Franklin,* the appellants attempted to appeal a three-judge district court order denying their petition for attorneys' fees in a section 5 case. Appellees moved to dismiss for lack of jurisdiction, arguing "[t]here is no statutory provision for an appeal from the District Court's action on a petition for attorney's fees to be made to the Supreme Court. The appeal provisions of 42 U.S.C. § 1973c are not applicable because the application for attorney's fees is not an action under Section 5." *See* Appellee's Motion to Dismiss at 6, *Franklin* (No. 94–2032). The Supreme Court issued a summary order vacating the judgment and remanding the case to the district court "for entry of a fresh judgment from which a timely appeal may be taken to the United States Court of Appeals for the Fourth Circuit." —— U.S. at ——, 116 S.Ct. at 42. The Supreme Court's order was issued without reasoning, but given that the jurisdictional issue was raised in the motion to dismiss and the only issue on appeal was attorneys' fees, it seems safe to assume that the Court found that attorneys' fees rulings should be appealed to the circuit courts. *See also Clinton v. Jeffers,* 503 U.S. 930, 112 S.Ct. 1462, 117 L.Ed.2d 609 (1992) (remanding attorneys' fees determination of a three-judge panel "with instructions to enter a fresh judgment from which an appeal may be taken to the

United States Court of Appeals for the Eighth Circuit").

Castro County cites one Supreme Court case in support of its contention that appeal of an attorneys' fees case lies with the high Court: *NAACP v. New York,* 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). In *NAACP,* the Court interpreted the "any appeal" language in section 4(a) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(5) (1994), which governs actions by states or their political subdivisions for declaratory judgments that any tests or devices do not deny or abridge voting rights. The language of the "any appeal" provision of section 4(a) exactly parallels the "any appeal" language at issue in this case, so the reasoning of the Court in construing that language is relevant here. *See Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (noting that "identical words used in different parts of the same act are intended to have the same meaning" particularly where there is a substantial relation between the two sections (internal quotation omitted)).

In *NAACP v. New York,* the NAACP sought to intervene in the section 4(a) action in district court after the United States consented to New York's motion for summary judgment on the section 4(a) question. *See* 413 U.S. at 348–49, 93 S.Ct. at 2594–95. The Court addressed the issue whether the "any appeal" language of section 4(a) includes an appeal by a would-be, but unsuccessful, intervenor. The Court determined that the words "any appeal" were "subject to broad construction; they could be said to include review of any meaningful judicial determination made in the progress of the § 4 lawsuit." *Id.* at 353–54, 93 S.Ct. at 2597. The Court therefore found that the NAACP was required to bring its claim to the Supreme Court.

The situation in this case, however, is quite different from the situation faced by the Court in *NAACP:* the District Court's orders regarding the motions to reopen by Crespin and the motion to intervene by MALDEF are directed solely to the issue of attorneys' fees and, therefore, cannot be said to be "meaningful judicial determinations made in the progress of" the section 5 action. Indeed, the claim for attorneys' fees comes only at the conclusion of the section 5 action, so a determination on attorneys' fees cannot possibly affect "the progress of" litigation in a section 5 case. *NAACP* is, therefore, inapplicable.

Like the Supreme Court, this circuit has not expressly addressed the question of its appellate jurisdiction over attorneys' fees issues in section 5 litigation. However, it is noteworthy that this court has heard such cases in the past, apparently without objection. *See Commissioners Court of Medina County, Texas v. United States,* 683 F.2d 435 (D.C.Cir.1982); *Donnell v. United States,* 682 F.2d 240 (D.C.Cir.1982).

The only circuit to address the issue, the Fifth Circuit, found that circuit courts have jurisdiction over the decisions of three-judge courts on the issue of attorneys' fees. In *Ward v. Dearman,* 626 F.2d 489 (5th Cir. 1980), the court found that when "a three judge court dismisses a case as moot, the appeal is to the court of appeals rather than to the Supreme Court." *Id.* at 491. In *Watkins v. Fordice,* 7 F.3d 453 (5th Cir. 1993), the court said, "We now hold that we have jurisdiction pursuant to 28 U.S.C. § 1291 to hear appeals from three-judge courts on the issue of attorneys' fees." *Id.* at 455 n. 2.[1]

In short, what little case law there is on the subject supports the conclusion that jurisdiction over an appeal from the determination of a three-judge panel on the issue of attorneys' fees lies with the federal courts of appeals. And we can find no case law to the contrary.

2. *The Policy Underlying 42 U.S.C. § 1973c*

Just as case law does not support requiring appellant Crespin to pursue his appeal in the Supreme Court, the policy concerns that animate direct appeal to the Supreme Court

---

**1.** Although we may not subscribe to the reasoning of the Fifth Circuit, we find the results in these cases persuasive.

in section 5 cases are inapplicable to attorneys' fee claims. The requirement of direct appeal to the Supreme Court was enacted by Congress to ensure the speedy resolution of disputes over voting rights. This was seen as necessary because, as the Court noted in *NAACP*, "the enforcement of the voting rights statutes 'has encountered serious obstacles in various regions of the country,' and progress 'has been painfully slow, in part because of the intransigence of State and local officials and repeated delays in the judicial process.'" *NAACP*, 413 U.S. at 354, 93 S.Ct. at 2597 (quoting H.R.Rep. No.89–439, at 9 (1965)). While the availability of attorneys' fees plays a critical role in encouraging aggrieved and interested parties to participate in the process of enforcing voting rights, an attorneys' fee determination is ancillary to the merits of the claims that were Congress's primary concern. The purpose of direct Supreme Court appeal—hastening the resolution of suits involving voting rights, *see* 413 U.S. at 355, 93 S.Ct. at 2597–98—does not mandate direct appeal to the Supreme Court of attorneys' fees issues, in which no individual's right to vote is at stake.

### B. *Crespin's Standing to Raise Attorneys' Fees Issues*

In a supplemental brief filed after the close of the regular briefing schedule, Castro County argued that Crespin has no standing to pursue this appeal. Castro County did not press this claim during oral argument, and for good reason. The suggestion that Crespin lacks standing is a contention that is devoid of merit.

■ In *Diamond v. Charles*, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), the Supreme Court held that "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III." *Id.* at 68, 106 S.Ct. at 1706. The original defendant in this case, the United States, left the action when the case on the merits was settled. Therefore, intervenor, appellant Crespin, must satisfy the Article III standing requirements to pursue a claim for attorneys' fees before this court. On the facts of this case, Crespin's standing is obvious.[2]

Under section 5, attorneys' fees are awarded only to "the prevailing party." 42 U.S.C. § 1973*l*(e). Thus, no determination about a party's entitlement can be made until the underlying case on the merits has been resolved, after which time the parties may raise the independent issue of attorneys' fees. Indeed, the Supreme Court has recognized that denial of attorneys' fees under a fee-shifting statute is an ancillary question to the main subject matter of the litigation. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200, 108 S.Ct. 1717, 1721, 100 L.Ed.2d 178 (1988) ("As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain."). Therefore, Crespin's claim for attorneys' fees did not mature until after the section 5 action had concluded.

It is also clear that, although Crespin was only an intervenor, and not the principal defendant, and that the case on the merits was concluded pursuant to a settlement, Crespin still was entitled to seek attorneys' fees. This court has recognized both that a party intervening as a defendant in a section 5 action may be a prevailing party and that a party may prevail by a consent judgment, negotiated settlement, or when action by another party renders the case moot. *Commissioners Court of Medina County*, 683 F.2d at 439–40.

■ Finally, there can be no doubt that Crespin has demonstrated the requisite (i) injury-in-fact, (ii) causation, and (iii) redressability to satisfy standing to raise this appeal on attorneys' fees. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82

---

2. In *Diamond,* the Court found that an intervenor's interest in attorneys' fees was insufficient to support a challenge to the *merits* of the case. 476 U.S. at 69–71, 106 S.Ct. at 1707–08 (The case involved an intervenor's attempt to defend the constitutionality of a state criminal abortion statute when the state did not appeal the lower court's decision that the statute was unconstitutional.). *Diamond* does not control this case, however, where intervenor is using his interest in attorneys' fees solely to support a challenge on the question of attorneys' fees.

L.Ed.2d 556 (1984) (setting forth the requirements for Article III standing). His claim that he is entitled to attorneys' fees under 42 U.S.C. § 1973*l*(e) meets the injury-in-fact standard. *See Warth v. Seldin,* 422 U.S. 490, 514, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975) ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where plaintiff would have suffered no judicially cognizable injury in the absence of statute."). Crespin's injury was caused by the refusal of Castro County and the District Court to entertain his request to file a motion for fees. And the injury he suffered obviously will be redressed by favorable action of this court, mandating that he be allowed to pursue a request for fees under Rule 54(d)(2)(B).

Accordingly, we find that Crespin's claim for attorneys' fees under 42 U.S.C. § 1973*l*(e) is sufficient to satisfy standing requirements to bring a challenge on the issue of attorneys' fees.

C. *The District Court's Denial of Appellant's Motion to Request Permission to File for Attorneys' Fees*

Having confirmed our jurisdiction to hear this case and Crespin's standing to bring it before us, we now turn to the merits of the District Court's decision. Our decision addresses only appellant Crespin's claim.[3]

On June 28, 1994, Crespin filed a document entitled a "motion to reopen" that requested only permission to seek attorneys' fees. On June 29, 1994, the section 5 action concluded. A month later, on July 29, 1994, the District Court denied Crespin's "motion to reopen," resting its decision on two grounds: (i) it was unnecessary for Crespin to move to reopen to seek attorneys' fees; and (ii) even if Crespin's motion were construed as a request for fees, it was deficient because it failed to comply with the Rule 54(d)(2)(B) requirements. *See Castro County, Texas v. United States,* Civ. No. 93–1782 (D.D.C. July 29, 1994), *reprinted in* App. C. We reverse the judgment of the District Court, because it is wrong as a matter of law in holding that Crespin had to file a motion for fees within fourteen days of the District Court's April 13, 1994 order.

It is of no moment that Crespin's June 28, 1994 motion was titled a "motion to reopen." The motion sought only to raise the issue of attorneys' fees, and it had no purpose whatever to address the merits of the underlying case, except as relevant to a claim for fees. In short, it is uncontested that Crespin's motion was nothing more than a request for permission to file for attorneys' fees. Under normal circumstances, Crespin probably would not have been required to file such a motion; in fact, it is not clear that he had to file the motion in this case. Nonetheless, the District Court's April 13, 1994 order caused Crespin to proceed with caution. The April 13 order, which provided that the case would be dismissed "without costs to any party" and with prejudice absent a request to reopen it within thirty days, *see Castro County, Texas v. United States,* Civ. No. 93–1782 (D.D.C. Apr. 13, 1994), *reprinted in* App. D, can be reasonably read to say that the District Court would not entertain anything further from the parties absent a motion to reopen. (The original thirty-day deadline for further action before the District Court under the April 13, 1994 order had been extended to June 29, 1994 at the request of Castro County.) Given his reasonable construction of the April 13, 1994 order, Crespin can hardly be faulted for making a timely request, *i.e.,* a request prior to the June 29, 1994 deadline, to be heard by the District Court on a claim for fees.

The District Court found that even if Crespin's June 28, 1994 motion were construed as a request for fees, it must be denied for failure to comply with the Rule 54(d)(2)(B) requirements. Rule 54(d)(2)(B) mandates

---

**3.** With regard to appellant MALDEF, we summarily affirm the decision of the District Court denying MALDEF's motion to intervene, because MALDEF filed no brief in this court. *See Garden State Broadcasting Ltd. Partnership v. FCC,* 996 F.2d 386, 388 n. 1 (D.C.Cir.1993) ("[Appellant], however, made no filings after it docketed its appeal. We therefore dismiss [appellant's] appeal for failure to prosecute."); *Barber v. American Sec. Bank,* 841 F.2d 1159, 1162 (D.C.Cir. 1988) ("[C]ounsel's failure to file a brief on time [and] his failure to file a motion for an extension ten days prior to the date his brief was due ... warrant dismissal....").

that motions for fees meet three requirements: (i) service within fourteen days of the entry of judgment; (ii) specification of the judgment and the grounds entitling the moving party to the award; and (iii) estimation of the amount sought. While the District Court held that Crespin had failed to meet all three requirements, its fatal error in this case was its finding that he missed the deadline for filing a fee motion because the motion should have been filed within fourteen days of the April 13, 1994 order.

■ The April 13, 1994 order surely did not trigger the Rule 54(d)(2)(B) fourteen-day filing requirement. Our conclusion on this point rests on two grounds. First, the April 13, 1994 order was not a final order subject to appeal. Rule 54(a) defines judgment to "include[ ] a decree and any order from which an appeal lies." The Advisory Committee Notes indicate that the deadline for filing attorney fees is "fourteen days after final judgment. . . . One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed." FED. R. CIV. P. 54 advisory committee's notes (1993 Amendments). The Rule thus posits a relationship between a judgment and its appealability. The April 13, 1994 order was not appealable when it was entered, because it was not a *final decision* under 28 U.S.C. § 1291 (1993). "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Budinich,* 486 U.S. at 199, 108 S.Ct. at 1720 (1988) (internal quotation and citation omitted). In this case, the April 13, 1994 order did not end the litigation on the merits, because it contemplated not only further settlement negotiations by the parties, but the possibility that the case would be litigated further in the event that settlement talks failed. The order, thus, would not have been immediately appealable and could not trigger Rule 54(d)(2)(B)'s filing requirements.

Second, at the time of the April 13, 1994 order, it would have been impossible for any court to order fees under 42 U.S.C. § 1973*l*(e), which provides for an award of fees to "the prevailing party," because both the results in the case and the amount of fees that would be incurred remained unknown. It is therefore both incorrect as a matter of law and illogical to characterize the April 13, 1994 order as final for purposes of Rule 54(d)(2)(B).

The District Court's mischaracterization of the April 13, 1994 order infects its entire disposition of the case. The District Court found that Crespin's June 28, 1994 motion did not meet the requirements of Rule 54(d)(2)(B), but the District Court, in effect, told Crespin that it did not matter what was filed, as the crucial flaw was the failure to file it within fourteen days of the April 13, 1994 order. Under the District Court's decision, it would not have mattered if Crespin had filed a complete motion for fees within fourteen days of June 29, 1994 (the date on which the case was dismissed with prejudice) because the trial court would have viewed any such filing as untimely. Further, in fact, it was the District Court's failure to respond quickly to Crespin's June 28, 1994 request for permission to proceed that resulted in Crespin's failure to file a complete motion within fourteen days of June 29, 1994. Crespin believed that he was required to request permission to file for attorneys' fees, not an unreasonable belief; he did not file a request within fourteen days of June 29, 1994 because he was awaiting permission from the District Court. The District Court did not answer his request until after fourteen days from June 29, 1994. It simply would be unfair to allow the delay in the District Court's response to defeat his request.

Consistent with a reasonable reading of the April 13, 1994 order, Crespin timely filed a request to proceed to a determination on the issue of attorneys' fees. This request should have been granted by the District Court in enough time to allow Crespin to comply with the filing requirements of Rule 54(d)(2)(B). We remand the case to the District Court to allow Crespin to file a complete request for fees and for a determination on the merits of his claim under 42 U.S.C. § 1973*l*(e).[4]

4. Given our disposition, it is unnecessary for us to reach the question whether the District

### III. CONCLUSION

For the reasons already given, we reverse the judgment of the District Court and remand the case so that Crespin may pursue his claim for attorneys' fees.

Court's denial of Crespin's Rule 60(b) motion was an abuse of discretion.