# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 16, 2010          Decided June 25, 2010

No. 09-5257

ST. MARKS PLACE HOUSING COMPANY, INC., ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT AND SHAUN L. S. DONOVAN, AS SECRETARY OF
THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00193-RBW)

*Stephen B. Meister* argued the cause and filed the briefs for appellants.

*Henry C. Whitaker*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Michael S. Raab*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, TATEL, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

*Circuit Judge* HENDERSON concurs in the judgment.

TATEL, *Circuit Judge*: Appellants, the current owners and prospective buyers of an affordable housing complex, seek to prepay the project's federally insured mortgage. The Department of Housing and Urban Development interpreted the mortgage to require its approval for prepayment and then conditioned that approval on the parties agreeing to maintain the property as affordable housing. Appellants challenge this decision, contending that HUD regulations prohibit the Department from requiring prepayment approval. Deferring to HUD's interpretation of its own regulations, we affirm the district court's dismissal of appellants' complaint. Along the way, we resolve a tricky jurisdictional issue arising from the fact that the district court issued an order purporting to dismiss the case but stating, "[T]his Order shall not be deemed a final Order subject to appeal until the Court has issued its Memorandum Opinion."

## I.

The National Housing Act (NHA), 12 U.S.C. §§ 1701 *et seq.*, authorizes the Department of Housing and Urban Development (HUD) to insure and subsidize mortgages in order to encourage development of affordable housing. *See, e.g.*, *id.* § 1713(b). The housing project at issue in this case, Castleton Park Apartments, is a 454-unit complex located on Staten Island. Developed as part of New York State's Mitchell-Lama affordable housing program, the complex was originally financed in 1974 with an approximately $20 million mortgage from the state's Housing Finance Agency. Three

years later, appellant St. Marks Place Housing Company and the Housing Finance Agency negotiated a refinancing, dividing the original mortgage into a senior loan of approximately $18 million and a subordinate loan for the balance of the debt. Under NHA sections 207 and 223(b), the Housing Finance Agency obtained insurance from HUD for the senior mortgage—the subject of this case. Section 207 "facilitate[s] particularly the production of rental accommodations, at reasonable rents, of design and size suitable for family living." *Id.* § 1713(b)(2). Section 223(f) provides for "[i]nsurance of mortgages executed in connection with . . . refinancing of existing multifamily housing project[s]." *Id.* § 1715n(f).

Although the Castleton Park mortgage has a forty-year term, reaching maturity in 2017, it gives the borrower a right to prepay. The mortgage's prepayment clause states: "Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder." A footnote to this sentence provides, "Subject to the prior approval of the Secretary of Housing and Urban Development."

In 2006, St. Marks and an affiliated limited partnership known as St. Marks Place Associates contracted to sell their interests in the Castleton Park Apartments to Stellar CP LP and Castleton GP LLC. As part of this transaction, the sellers and the prospective buyers notified HUD that the two St. Marks companies intended to prepay the senior HUD-insured mortgage. Citing the mortgage's requirement that HUD approve prepayment, however, the Department notified the parties that their prepayment was subject to NHA section 250. That section provides, "During any period in which an owner

of a multifamily rental housing project is required to obtain the approval of the Secretary for prepayment of the mortgage, the Secretary shall not accept an offer to prepay the mortgage on such project" unless he finds that certain conditions designed to preserve the supply of affordable housing and protect the project's tenants have been satisfied. 12 U.S.C. § 1715z-15(a). HUD advised the parties that pursuant to these requirements it would approve prepayment only if the companies invest substantial sums to repair and rehabilitate the complex, promise to maintain it as a viable multifamily affordable housing property, and notify residents of the prepayment.

In response, the St. Marks companies and the prospective Castleton Park purchasers filed suit in the United States District Court for the District of Columbia. The companies principally argued that at the time the Castleton Park senior mortgage was executed, HUD regulations governing section 207 mortgages barred prepayment conditions and that the mortgage's requirement that the owners obtain HUD approval for prepayment is therefore unenforceable. In support, they cited 24 C.F.R. § 207.14(a) (1977), which provides that section 207-insured mortgages "shall contain a provision permitting the mortgagor to prepay the mortgage . . . after giving to the mortgagee 30 days' notice in writing." Moving to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), HUD countered that section 207.14(a) limits only a *lender's* right to refuse prepayment. According to HUD, nothing in section 207.14(a) prohibits prepayment from being conditioned on HUD approval.

The district court, deferring to HUD's interpretation of its own regulation, dismissed the complaint. *St. Marks Place Housing Co. v. HUD*, No. 08-193, 2009 WL 1543688, at *6–7 (D.D.C. June 3, 2009). The companies appeal, and we review

the district court's decision de novo. *Nat'l Wildlife Fed'n v. Browner*, 127 F.3d 1126, 1128 (D.C. Cir. 1997) (reviewing de novo district court's Rule 12(b)(6) dismissal of a complaint against EPA based on the agency's regulations).

## II.

Before considering the companies' arguments on the merits, we must address a threshold question regarding our jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (courts must consider jurisdictional issues sua sponte). Under 28 U.S.C. § 1291, appeals may be taken (with certain exceptions not relevant here) only from "final decisions." "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988) (internal quotation marks omitted). Under Federal Rule of Appellate Procedure 4(a)(1)(B), the notice of appeal must be filed "within 60 days after the judgment or order appealed from is entered" in civil cases where a U.S. agency is a party. *See also* 28 U.S.C. § 2107(b) (statutory basis for Rule 4(a)(1)(B)); *Bowles v. Russell*, 551 U.S. 205, 210 (2007) (recognizing "statutory time limits for taking an appeal as jurisdictional"). This deadline is strict: "Congress [has] specifically limited the amount of time by which district courts can extend the notice-of-appeal period," litigants "cannot rely on forfeiture or waiver to excuse . . . lack of compliance," and courts have "no authority to create equitable exceptions." *Bowles*, 551 U.S. at 213–14 (2007).

In this case, the district court entered an order purporting to dismiss the companies' complaint on March 27, 2009. The order states:

6

The plaintiffs bring this claim pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06 (2006), seeking a declaratory judgment, injunctive relief, and an order of mandamus. Currently before the Court is the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the various filings submitted by the parties, the Court will grant the defendants' motion. Therefore, in accordance with the Court's reasoning to be set forth in the Memorandum Opinion to be issued within thirty days of this order, absent unforseen [sic] circumstances, it is hereby

ORDERED that the defendants' motion is GRANTED. It is further

ORDERED that this case is closed. It is further

ORDERED that this Order shall not be deemed a final Order subject to appeal until the Court has issued its Memorandum Opinion.

*St. Marks*, No. 08-193 (D.D.C. Mar. 27, 2009) (footnote omitted). Sixty-eight days later, on June 3, the court issued its opinion. In a footnote, the court stated, "This Memorandum Opinion renders the Order granting the Defendants' Motion to Dismiss entered on March 27, 2009, an appealable Order." *St. Marks*, 2009 WL 1543688, at *8 n.5. The companies filed their notice of appeal on July 13, forty days after the June 3 opinion and 108 days after the March order. As measured from the opinion, then, the companies' notice of appeal was timely, but as measured from the earlier order, it was not.

The companies argue that their appeal is timely because, as they see it, the district court's March order was not a section 1291 "final decision," so Rule 4(a)'s sixty-day clock could not start running until the district court issued its June opinion. HUD agrees, even though, having prevailed in the district court, it would obviously benefit from a dismissal for lack of appellate jurisdiction. Whether the companies and HUD are correct turns on how one resolves the apparently contradictory language in the March order. On the one hand, the order announced the court's decision in seemingly definitive terms: "ORDERED that the defendants' motion is GRANTED"; "ORDERED that this case is closed." *See Ctr. for Nuclear Responsibility, Inc. v. U.S. Nuclear Reg. Comm'n*, 781 F.2d 935, 938–39 (D.C. Cir. 1986) (a final order that precedes the opinion explaining it nonetheless starts the time for appeal). On the other hand, the order disclaimed its own finality: "[T]his Order shall not be deemed a final Order." Several considerations convince us that the latter statement controls, meaning that the district court did not issue a section 1291 "final decision" until it released its June opinion.

First, and most obviously, district courts can choose when to decide their cases. This provides a strong reason to take the district court at its word when it wrote, "[T]his Order shall not be deemed . . . final." *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385 n.6 (1978) (describing section 1291 finality as turning on "whether the district court intended the judgment to represent the final decision in the case").

Second, and somewhat counterintuitively, apparently definitive dismissal language—like "ORDERED that this case is closed"—does not always signal finality. For example, in *Castro County, Tex. v. Crespin*, 101 F.3d 121 (D.C. Cir. 1996), we found an order to be nonfinal even though it stated, "ORDERED that the above-entitled cause shall be, and

hereby is, DISMISSED . . . ." *Id.* at 123. Although *Castro County* differs from this case in that it dealt with a conditional order—the order stated that the case would be reopened if settlement negotiations failed—it makes clear that in determining finality, we must read the district court's order as a whole and may not focus on dismissal language in isolation. *See also Se. Fed. Power Customers, Inc. v. Harvey*, 400 F.3d 1, 5 (D.C. Cir. 2005) (order stating that settlement agreement "is hereby declared valid and approved" was not final where it was conditioned on another court lifting a related injunction).

Third, the district court issued its March order just four days before the March 31 deadline on which judges must report all motions that have been pending for more than six months. *See* 28 U.S.C. § 476(a) (creating reporting requirements); Administrative Office of the U.S. Courts, *Civil Justice Reform Act of 1990* (2009) (report on motions pending March 31, 2009), *available at* http:// jnet.ao.dcn / Statistics / Other_Statistical_Publications / Civil_Justice_Reform_Act_March_2009.html. At that time, HUD's motion to dismiss had been pending for more than six months, and the district court, having ordered the motion "GRANTED" and the case "closed," was able to file the March 31 report without listing the motion. In the companion case that we resolve by judgment today, *Woodruff v. McPhie*, No. 09-5086 (D.C. Cir. June 25, 2010), the district court did the same thing: just a few days before the March 31 deadline, it granted a motion to dismiss that had been pending for over six months, instructing in its dismissal order that it "not be deemed a final order." *Woodruff v. McPhie*, No. 06-688 (D.D.C. Mar. 28, 2008). Given these circumstances, and given that the March order at issue in this case warned that "this Order shall not be deemed a final Order subject to appeal," we think it quite clear that the district court "closed" the case for reporting purposes only. Although we are aware of no case quite like this one, other

circuits have held that closure of a case for reporting purposes—sometimes referred to as "administrative closure"—does not qualify as a section 1291 "final decision." *See Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; *i.e.*, administratively closed cases are not counted as active."); 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.6, at 539 & n.29 (2d ed. 1991 & Supp. 2010) (collecting cases).

Finally, in applying Federal Rule of Civil Procedure 58's requirement that judgments be set out in a separate document, the Supreme Court has emphasized that "'[t]he rule should be interpreted to prevent loss of the right of appeal, not to facilitate loss.'" *Bankers Trust Co.*, 435 U.S. at 386 (quoting 9 J. Moore, *Federal Practice* ¶ 110.08[2], at 119–20 (1970)). Because the separate document rule and section 1291 work together to determine the timing of appeals, we think the same principle should apply to questions of finality, thus providing another reason why orders expressly denying their own finality, like the district court's March order, should be taken at their word. Were we to treat the March order as final notwithstanding such language, then the companies would lose their right to appeal even though, as counsel made clear at oral argument, they had relied on that language to postpone filing their notice of appeal until the district court issued its June opinion.

To sum up, although district courts are generally without authority to extend the time for appeal, they may choose when to decide their cases. Of course, district courts may not use the latter authority as cover for doing the former, but that is not what happened here. The court made its March order

nonfinal because it entered the order for reporting purposes only. The court's "final decision" came in its June opinion, and because the companies timely filed their notice of appeal following that opinion, we have jurisdiction.

That said, we believe that orders whose finality awaits the issuance of a later opinion should be avoided. Setting aside the propriety of using such orders to report motions as resolved when they still require judicial attention—a matter we leave to the district courts and the Administrative Office— these orders can confuse parties. In this case, for example, counsel for the companies was quite candid: "I think [the order] is contradictory and it did create confusion. And to be perfectly blunt, we struggled with it." Oral Arg. Tr. at 4. Only after "consultation with local counsel," he explained, did they come "to the conclusion . . . that we had to wait for the Memorandum Decision" before filing an appeal. *Id.* at 4–5.

In suggesting that orders like the one here be used rarely, if at all, we fully understand, as Judge Rovner—herself a former district judge—has cautioned, that district courts have "scarce resources" and "are overextended"; that reports on unresolved motions may produce "something of a stigma"; and that "congressionally-imposed time constraints on the civil docket compete with the Speedy Trial Act restrictions of the criminal docket," as well as other obligations. *Otis v. City of Chicago*, 29 F.3d 1159, 1172 (7th Cir. 1994) (Rovner, J., concurring in the judgment). And we certainly share Judge Rovner's belief that it is "incumbent upon us, as a responsible and responsive reviewing court, to provide our colleagues with all reasonable means of efficiently and intelligently managing their case loads." *Id.* at 1173. The last thing we want is to exacerbate the competing pressures on busy, dedicated district court judges. Still, we think all judges, both circuit and district, must take care to ensure that case

management innovations neither confuse litigants nor threaten their procedural rights.

## III.

On the merits, the companies' principal argument rests on 24 C.F.R. § 207.14(a) (1977), which states in full: "*Prepayment privilege*. The mortgage shall contain a provision permitting the mortgagor to prepay the mortgage in whole or in part upon any interest payment date after giving to the mortgagee 30 days' notice in writing in advance of its intention to so prepay." The companies contend that "[i]f the mortgagor of a Section 207 mortgage loan must seek HUD's approval for prepayment of that loan, and HUD refuses to grant such approval, then the result is that the mortgagor has been denied the right to 'prepay the mortgage in whole or in part . . . after giving the mortgagee 30 days' notice in writing in advance of its intention to so prepay.'" Appellants' Br. 45 (quoting 24 C.F.R. § 207.14(a)). Drawing an *expressio unius* inference from the regulation, the companies insist that "[t]he only permissible requirements for the prepayment of [a section 207 mortgage are] that the borrower give the required thirty days' notice of its intent to make such prepayment and that the prepayment occur on an interest payment date." *Id.* HUD counters that the prepayment term "provided for in § 207.14 is not . . . an 'unfettered right to prepay.'" Appellees' Br. 24 (quoting Appellants' Br. 37). Instead, HUD argues, the "regulation addresse[s] the rights and obligations as between the owner and the lender," and the Castleton Park mortgage complies with section 207.14(a) because it denies the lender the right to refuse prepayment. *Id.* at 24–25. HUD continues: "[i]t is reasonable to construe [section 207.14] as silent on the parties' privileges with respect to nonparties to the mortgage, such as the Secretary, and thus to permit the parties to condition prepayment on the Secretary's approval." *Id.* at 25.

In evaluating these competing arguments, "[w]e must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Indeed, "the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* (internal quotation marks omitted).

Were we interpreting HUD's regulations in the first instance, the companies' *expressio unius* argument might have some merit. But we have previously held that the *expressio unius* canon "has little force" in the context of challenges to an agency's interpretation of a statute, "where we defer to an agency's interpretation unless Congress has directly spoken to the precise question at issue." *Mobile Commc'ns Corp. of Am. v. FCC*, 77 F.3d 1399, 1404–05 (D.C. Cir. 1996) (internal quotation marks omitted). The same principle applies all the more so where, as here, we are reviewing an agency's interpretation of its own regulations. *Nat'l Med. Enters. v. Shalala,* 43 F.3d 691, 696–97 (D.C. Cir. 1995) (in reviewing an agency's interpretation of its own regulations, "we apply a still more deferential standard" than in reviewing its interpretation of a statute).

In this case, nothing in section 207.14(a) unambiguously forecloses HUD's interpretation of the regulation as governing only "the rights and obligations as between the owner and the lender." Appellees' Br. 25. The regulation describes what the "mortgage shall contain," and the mortgage is between the mortgagor and mortgagee. HUD is not a party, nor is it mentioned anywhere in the text of the provision. Given this, we have no basis for concluding that HUD's position—that the regulation does not relate to it—is "plainly erroneous or inconsistent with the regulation."

*Thomas Jefferson Univ.*, 512 U.S. at 512 (internal quotation marks omitted).

HUD's interpretation gains support from section 207.14(a)'s subsequent subsections. Section 207.14(b) governs prepayment charges, stating that section 207 mortgages "may contain a provision" for a prepayment charge "as may be agreed upon between the mortgagor and mortgagee," so long as the mortgagor is "permitted to prepay up to 15 percent of the original principal amount . . . in any one calendar year" without charge. By its terms, then, this provision focuses on the financial relationship between the lender and borrower, meaning that the requirement that a borrower be "permitted to prepay up to 15 percent" without penalty clearly refers to prepayment permission from the *lender*. Likewise, section 207.14(c) states that a mortgage "may provide for the collection by the mortgagee of a late charge," again focusing on the financial terms of the deal between the borrower and the lender. Reading section 207.14(a) in light of these neighboring provisions, we think it perfectly reasonable for HUD to have interpreted the regulation as prohibiting only mortgage terms that give lenders the right to refuse prepayments, while remaining silent on those giving HUD a right to object to such payments.

The companies insist that even if we might otherwise defer to HUD's interpretation, we should not do so here because, according to an internal HUD memorandum, the Department's General Counsel advocated for a different reading of the regulation. But so what? The HUD secretary, like all agency heads, usually makes decisions after consulting subordinates, and those subordinates often have different views. In the end, it is the agency head whose decision we review, and as the Supreme Court has made clear, "the mere fact that the Secretary's decision overruled the

views of some of his subordinates is by itself of no moment in any judicial review of his decision." *Wisconsin v. City of New York*, 517 U.S. 1, 23 (1996) (upholding the Secretary of Commerce's decision to overrule the Census Director regarding statistical adjustments to the decennial census).

Finally, the companies argue that even if we reject their reading of section 207.14(a), we should interpret the Castleton Park mortgage to require HUD approval for only partial prepayments and not the kind of full prepayment that the companies seek to make. The footnote that makes prepayments "[s]ubject to the prior approval of [HUD]" is attached to the end of the following sentence: "Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder." According to the companies, the footnote modifies only the second clause, i.e., "or in an amount equal to one or more monthly payments on principal next due." The footnote signal, however, appears at the end of the sentence, not after the phrase "or in an amount . . . ," and therefore obviously modifies the entire sentence. The companies insist that an attachment to the mortgage supports their interpretation because it discusses HUD preapproval of one particular early payment contemplated by the parties but is silent as to HUD preapproval of other possible prepayments. But whatever the significance of this attachment, it hardly gives us reason to embrace the companies' counterintuitive and countertextual interpretation of the mortgage itself.

We affirm the district court's dismissal of this case.

*So ordered.*