PUEBLO OF SANDIA, Appellee,

v.

Bruce BABBITT, in his official capacity as Secretary of the Interior, *et al.,* Appellants.

Nos. 98–5428 and 98–5451.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 2000.

Decided Nov. 17, 2000.

David Lazerwitz, Attorney, United States Department of Justice, argued the cause for the federal appellants in No. 98–5451. Lois J. Schiffer, Assistant Attorney General, and Peter Coppelman, William Lazarus and Marta Hoilman, Attorneys, United States Department of Justice, were on brief.

Thomas R. Bartman argued the cause for Sandia Mountain Coalition, et al., appellants in No. 98–5428, and the City of Albuquerque, amicus curiae in No. 98–5451. Robert M. White was on brief.

Reid Peyton Chambers argued the cause for the appellee. Donald J. Simon, David C. Mielke and Peter T. Grossi were on brief. James M. Rosenthal entered an appearance.

Before: GINSBURG, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The County of Bernalillo, New Mexico and the Sandia Mountain Coalition (intervenor appellants) appeal the district

court's remand order and grant of summary judgment to the appellee, the Pueblo of Sandia (Pueblo). The federal appellants, Bruce H. Babbitt in his official capacity as Secretary of the United States Department of the Interior (Interior) and Dan Glickman in his official capacity as Secretary of the United States Department of Agriculture (Agriculture), move to withdraw their own appeal and to dismiss the intervenor appellants' appeal for lack of appellate jurisdiction. For the reasons set forth below, we grant the federal appellants' motion and hold that the court lacks jurisdiction under 28 U.S.C. § 1291 to hear the intervenor appellants' appeal.

In the proceedings below, the district court reviewed an opinion issued by the Solicitor of Interior (Solicitor) denying a request by the Pueblo for a corrected survey designating the eastern boundary of its land grant as the "main ridge" of the Sandia Mountains, located directly east of Albuquerque, New Mexico. The Pueblo claimed that an 1859 survey commissioned by the government erroneously set the Pueblo's eastern boundary at the base of the Sandia Mountains rather than along the Mountains' crest line, as allegedly set forth in the Pueblo's 1748 Spanish land grant confirmed by the United States Congress in 1858. Interior rejected the Pueblo's claim, concluding that the original land survey accurately set the Pueblo's eastern boundary at the foothills of the Mountains.

The Solicitor reasoned that the King of Spain, who originally granted the land to the Pueblo, intended to grant a "formal" pueblo only, not the larger area claimed.[1]

The Pueblo sued the Secretaries of Interior and Agriculture seeking a judgment designating the main ridge of the Sandia Mountains as the Pueblo's eastern boundary and directing the Interior Secretary to correct the 1859 survey. See Compl. 22–23; Am. Compl. 18. The district court granted motions to intervene filed by a coalition of homeowners in the affected region and by Bernalillo County. After denying the federal appellants' motion to dismiss,[2] the district court reviewed Interior's actions under the Administrative Procedure Act (APA). It found the circumstances surrounding the Sandia land grant ambiguous. See Pueblo of Sandia v. Babbitt, Civ. No. 94–2624, slip op. at 10 (D.D.C. July 18, 1998). In light of the ambiguity, the court held that Interior should have applied the canon of construction resolving unclear language in favor of Indian claims instead of using the presumption of survey regularity.[3] See id. at 9–11. The court denied the federal appellants' motion for summary judgment and granted the Pueblo's motion for summary judgment. See id. at 11. Finding Interior's actions arbitrary and capricious, the court vacated the Solicitor's Opinion and remanded the case "to the

---

1. A formal pueblo consists of four square leagues of land, the area within the extension of one league (2.6 miles) measured from the center of the settlement to the north, south, east and west. See JA 322–23 (Stanley M. Hordes, "History of the Boundaries of the Pueblo of Sandía, 1748–1860"); cf. Pueblo of Sandia v. Babbitt, Civ. No. 94–2624, 1996 WL 808067, at *2 n. 3 (D.D.C. Dec. 10, 1996).

2. See Pueblo of Sandia, 1996 WL 808067, at *9. The district court concluded that the APA governed the Pueblo's action, rejecting the federal appellants' contention that it was time barred by either the Quiet Title Act or the Indian Claims Commission Act.

3. The United States Supreme Court has long recognized the canon of construction that resolves ambiguity in any document related to

Indian lands in favor of the Indian claim. See, e.g., Antoine v. Washington, 420 U.S. 194, 199, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975) ("The canon of construction applied over a century and a half by this Court is that the wording of treaties and statutes ratifying agreements with the Indians is not to be construed to their prejudice."); County of Oneida v. Oneida Indian Nation of New York State, 470 U.S. 226, 247–48, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (court resolves ambiguity in favor of Indian claims). The canon of survey regularity provides that surveys of the United States are presumed correct and in compliance with statutory requirements. See Nina R. B. Levinson, 1 I.B.L.A. 252, 256 (Feb. 2, 1971).

Interior Department for agency action consistent with [the court's] Opinion." *Id.*

The intervenor appellants filed a notice of appeal on August 13, 1998. To protect the government's right to appeal, the federal appellants filed their notice on September 15, 1998. This court consolidated the appeals *sua sponte* and on October 29, 1998 granted the parties' joint motion to hold the appeals in abeyance pending settlement negotiations. The Pueblo, the federal appellants, the intervenor appellants, the Sandia Peak Tram Company (which moved to participate as *amicus curiae* in the district court proceedings) and the City of Albuquerque (which appeared as *amicus curiae* in this court) then entered into negotiations under the auspices of a private mediator. The intervenors and the City withdrew from mediation in August 1999. Nevertheless, the continuing negotiations among the government, the Pueblo and the Tram Company were successful and resulted in a settlement.[4] The federal appellants then filed a motion to dismiss both appeals. We deferred ruling on the motion until the case was heard on the merits. Because this court may not proceed without appellate jurisdiction, we must address the motion to dismiss before considering the arguments on the merits. *Cf. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

■ The jurisdiction of the courts of appeals to review district court actions is limited to "final orders." *See* 28 U.S.C. § 1291. Section 1291 "entitles a party to appeal not only from a district court decision that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment,' but also from a narrow class of decisions that do

not terminate the litigation, but must, in the interest of 'achieving a healthy legal system,' nonetheless be treated as 'final.'" *Digital Equip. Corp. v. Desktop Direct,* 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (citations omitted). Because the district court's decision here does not end the litigation on the merits, we grant the motion to dismiss for lack of jurisdiction.

■ "It is well settled that, as a general rule, a district court order remanding a case to an agency for significant further proceedings is not final." *In re St. Charles Preservation Investors, Ltd.,* 916 F.2d 727, 729 (D.C.Cir.1990); *see American Hawaii Cruises v. Skinner,* 893 F.2d 1400, 1403 (D.C.Cir.1990). This rule "best serves the interests of judicial economy and efficiency" because it "avoids the prospect of entertaining two appeals, one from the order of remand and one from entry of a district court order reviewing the remanded proceedings." *In re St. Charles Preservation Investors, Ltd.,* 916 F.2d at 729. Deferring review also leaves open the possibility that no appeal will be taken in the event the proceedings on remand satisfy all parties. *See id.* The intervenor appellants ask the court to apply a case-specific approach to the determination of appealability. The United States Supreme Court, however, has "warned that the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a 'particular injustice' averted by a prompt appellate court decision." *Digital Equip. Corp.,* 511 U.S. at 868, 114 S.Ct. 1992 (citation omitted) (holding that district court's refusal to enforce settlement agreement purporting to

---

4. Although the parties agreed to settle the pending litigation and related matters on the terms set forth in the "Agreement of Compromise and Settlement," the settlement agreement requires ratifying legislation to effectuate its terms. *See* Plaintiff–Appellee Sandia Pueblo's Response in Support of Federal Appellants' Motions to Dismiss Appeals, for Leave to File a Dispositive Motion Later than 45 Days after Docketing the Case, and to Defer Briefing pending Resolution of these Motions, at Appendix A ("Agreement of Compromise and Settlement"), *Pueblo of Sandia v. Babbitt,* Nos. 98–5428 & 98–5451 (Apr. 13, 2000).

shelter party from suit altogether does not qualify for immediate appeal under § 1291); *see Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 439–40, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (holding that "orders disqualifying counsel in civil cases, as a class, are not sufficiently separable from the merits to qualify for interlocutory appeal"). Because the district court's order comes within the category of a remand for significant further proceedings, we are without jurisdiction to review it because, as noted, remand orders as a category are not final. *See In re St. Charles Preservation Investors, Ltd.,* 916 F.2d at 729.

The intervenor appellants ask this court to consider the district court's remand order a final decision because the order left nothing for the agency to do on remand other than the ministerial act of issuing a corrected boundary. We disagree with their characterization for two reasons.

■ First, although the Pueblo's complaint sought an order directing the Interior Secretary to issue a corrected survey, the district court's order neither entered a "judgment declaring that the 1748 Spanish land grant...identifies and designates the true boundaries" of the Pueblo nor directed Interior to issue a new survey. Am. Compl. 18. Rather, the court remanded the case to Interior for further proceedings. The intervenor appellants' assertion disregards the court's role in reviewing agency action under the APA. Under the APA, if the record does not support the agency's decision, then the court must remand to the agency for additional investigation or explanation. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). "The reviewing court is not entitled to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Id.* at

744, 105 S.Ct. 1598. In the proceedings below, the district court reviewed Interior's actions, and the Solicitor's in particular, under the APA. The court first recognized that under the APA "it may set aside an agency action only where it finds the action 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Slip op. at 5 (quoting 5 U.S.C. § 706(2)(A)). The court then reviewed the record, including its factual component, and determined that Interior's actions were arbitrary and capricious, concluding that the Solicitor's Opinion "unjustifiably denigrate[d] the Indian-favoring policy and elevate[d] the presumption of survey regularity." Slip op. at 8. Although the result on remand *may* be the issuance of a corrected survey, that result is not directed by the court's decision.

Second, while we acknowledge that several courts, including this one, have noted that remand orders may be considered final where a court remands for solely "ministerial" proceedings, *see In re St. Charles Preservation Investors, Ltd.,* 916 F.2d at 729; *see also Koyo Seiko Co. v. United States,* 95 F.3d 1094, 1096–1097 (Fed.Cir.1996) (finding district court's remand for sole purpose of correcting two computer programming errors ministerial); *Tallahassee Mem. Regional Med. Ctr. v. Bowen,* 815 F.2d 1435, 1443 n. 12 (11th Cir.1987) (finding remand directing agency to pay plaintiff's medical bills final), here the district court's remand order contemplates more than the ministerial act of issuing a corrected survey. On remand, Interior is to reconsider the facts contained in the nine-volume administrative record under the Indian claim-favoring canon. It must also reconsider its position that it lacks the legal authority to issue a corrected survey.[5] Given the twelve-year

---

5. The Solicitor maintained that even if the Pueblo established "by a preponderance of the evidence that the [original survey] was either fraudulent or grossly erroneous," the Secretary would be without authority to issue a new patent "unless he found that the United

States never owned the disputed land." JA 1124–1125 (Solicitor's Opinion at 12–13 & n.6). The district court rejected the Solicitor's reasoning, holding that the Secretary has supervisory authority over all public lands, including the authority to survey Indian

period of time since Interior finished its earlier proceedings and the continuing interest in the matter, it will have the option of re-opening the record to solicit additional comments from the public before conducting its reevaluation. Finally, if Interior does issue a corrected boundary, it must commission a survey to determine where the "main ridge" of the Sandia Mountains lies.

For the foregoing reasons, the federal appellants' motion both to withdraw their own appeal in 98–5451 and to dismiss the intervenor appellants' appeal in 98–5428 is granted and the appeals in both of the consolidated cases are hereby dismissed.[6]

*So ordered.*

lands, to correct erroneous land surveys and to correct patents of conveyances to eliminate errors. *See Pueblo of Sandia,* 1996 WL 808067, at *7.

6.  Because of our conclusion that we lack jurisdiction, we do not reach the merits of the contention of both sets of appellants that the district court's review under the APA was improper. *See supra* note 2. In addition, because the intervenor appellants do not rely on the collateral order doctrine to support appealability, we need not reach that issue either.