# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 8, 2005          Decided March 4, 2005

No. 04-5143

SOUTHEASTERN FEDERAL POWER CUSTOMERS, INC.,
APPELLEE

v.

FRANCIS J. HARVEY, IN HIS OFFICIAL CAPACITY AS SECRETARY
OF THE ARMY, ET AL.,
APPELLEES

STATE OF FLORIDA,
APPELLANT

———

Consolidated with
04-5148

———

Appeals from the United States District Court
for the District of Columbia
(No. 00cv02975)

———

*James T. Banks* and *William S. Cox, III* argued the causes for
appellants State of Florida and State of Alabama. *Charles J.
Crist, Jr.*, Attorney General, *Christopher M. Kise*, Solicitor
General, *Parker Thomson*, *Lauren James Caster, Donald G.
Blankenau and R. Craig Kneisel*, Assistant Attorneys General,
Attorney General's Office of the State of Alabama, and

*Matthew Lembke*, *Warren B. Lightfoot*, and *W. Larkin Radney IV* were on brief.

*Michael T. Gray*, Attorney, United States Department of Justice, *Bruce P. Brown* and *Clinton A. Vince* argued the causes for the appellees. *Robert A. Oakley*, Attorney, United States Department of Justice, *Thurbert E. Baker*, Attorney General, Attorney General's Office of the State of Georgia, *R. Todd Silliman, William M. Droze, J. Cathy Fogel, David A. Fitzgerald, Edward J. McGrath, Patricia T. Barmeyer* and *Lewis B. Jones* were on brief.

*Deborah M. Murray* and *Mary Maclean Asbill* were on the joint brief of *amici curiae* Alabama Rivers Alliance *et al.* in support of the appellants.

*Susan N. Kelly* and *Wallace F. Tillman* were on the joint brief of *amici curiae* American Public Power Association et al. in support of the appellees.

Before: GINSBURG, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The states of Alabama and Florida appeal the district court's approval of a settlement agreement among the appellees, the United States Army Corps of Engineers (Corps), the State of Georgia, various Georgia municipal and county water authorities (Water Supply Providers) and Southeastern Federal Power Customers, Inc. (Southeastern), a non-profit association that represents rural electric cooperatives and municipal electric systems utilities that purchase hydropower from federal projects. Under the settlement the Corps agreed to enter into interim contracts with the Water Supply Providers to lease them water storage space in Lake Sidney Lanier, a reservoir formed by the Buford Dam, which the Corps built and operates on the Chattahoochee River north of Atlanta. In turn, Southeastern's members, who distribute hydropower generated by the Buford Dam, will

receive credits in the amount of the supply rent against the price they pay for hydropower. After conditionally approving the settlement agreement, the district court issued an order dismissing the case as moot. Because we conclude that the case is not moot, we vacate the dismissal order, dismiss the appeals from the other, nonfinal orders for lack of appellate jurisdiction and remand to the district court.

In 1946 the Congress authorized the Corps to design and construct the Buford Dam project, which was completed in 1956. *See* Rivers and Harbors Act of 1946, Pub. L. No. 79-525, 60 Stat. 634, 635 (1946). During the 1970s and the 1980s the Corps entered into renewable five-year contracts with several Water Supply Providers, which contracts allowed the latter, subject to their payment of set fees, to withdraw water either from the Chattahoochee River downstream of the Buford Dam or from Lake Lanier itself. Since the last of these contracts expired in 1990, the Corps has continued to permit the Water Supply Providers to withdraw water under the terms of the expired contracts but in increasing amounts.

In October 1989 the Corps released a draft proposal to substantially increase the amount of the daily water withdrawal, prompting Alabama to file suit against the Corps in the United States District Court for the Northern District of Alabama in June 1990. Alabama's complaint alleged, *inter alia*, that the Corps violated the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C)(i)-(v), by failing to consider the potential environmental effects of the increased withdrawals. On September 19, 1990 the Alabama district court, upon motion of the parties, issued a stay order which incorporated the parties' stipulation they would not "execute any contracts or agreements which are the subject of the complaint in th[e] action." JA 332-33, 329.

On December 12, 2000 Southeastern filed this action in the United States District Court for the District of Columbia seeking

to enjoin the Corps from permitting the increased water withdrawals which, Southeastern alleged, impaired the hydropower capacity of the Buford Dam project to Southeastern's financial detriment. Georgia and the Water Supply Providers moved to intervene in February 2001.

On January 9, 2003, after lengthy mediation, Southeastern, the Corps, Georgia and the Water Supply Providers concluded a settlement agreement which provided for interim ten-year contracts allocating water storage space in Lake Lanier to the Water Supply Providers which, in turn, were to pay higher fees for the storage to compensate Southeastern for lost hydropower. Each interim contract was renewable for an additional ten years and was to "roll-over" into a permanent contract if such were authorized by the Congress or by court order. On January 16, 2003 the parties filed the settlement agreement with the D.C. district court.

In February 2003 Florida and Alabama moved to intervene in this action and the motions were granted on October 9, 2003. In February 2003 they also separately moved to abate or transfer the action in favor of the pending action in the Northern District of Alabama. In January 2003, Florida and Alabama had filed a motion in the Alabama action to enjoin and declare void the settlement agreement, alleging that it violated the 1990 stay of that action.

On October 15, 2003 the Alabama district court issued a preliminary injunction prohibiting the Corps and Georgia from "(1) filing the settlement agreement [in the D.C. case], (2) implementing any part of th[e] settlement agreement, and (3) entering into any other new storage or withdrawal contracts affecting the Apalachicola-Chattahoochee-Flint River Basin without approval of th[e] court." JA 1492. On November 7, 2003 the D.C. district court denied the motion to dismiss, transfer or abate this action. On November 24, 2003 the Alabama district court issued an order directing that "all

activity" in that action be stayed until the D.C. district court issued an order "deciding the validity of the proposed settlement agreement." JA 1514. The stay order further directed: "Within thirty days of [the D.C. district court's] order, the parties shall meet and file with the court a status report containing a proposed outline of how further litigation will proceed." JA 1515.

In a Memorandum and Order filed February 10, 2004 the D.C. district court rejected Florida's and Alabama's challenge and directed that the settlement agreement "is hereby declared valid and approved, and may be executed and filed and thereafter performed in accordance with its terms; provided, however, that the preliminary injunction entered by N.D. Ala. on October 15, 2003, is first vacated." 301 F. Supp. 2d at 35. Two days later, on February 12, 2004, the court issued an order dismissing the action as moot in light of its approval of the settlement agreement.

Florida and Alabama then filed these appeals challenging the district court's approval of the agreement. We conclude the appeals should be dismissed for lack of jurisdiction.

" 'Jurisdiction is, of necessity, the first issue for an Article III court.' " *DSMC Inc. v. Convera Corp.,* 349 F.3d 679, 682 (D.C. Cir. 2003) (quoting *Tuck v. Pan Am. Health Org.,* 668 F.2d 547, 549 (D.C. Cir. 1981)). "The jurisdiction of the courts of appeals to review district court actions is limited to 'final orders,' " *Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 880 (D.C. Cir. 2000) (citing 28 U.S.C. § 1291) ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). A "final" decision under 28 U.S.C. § 1291 is generally one "that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.' " *Id.* (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Catlin v. United*

*States,* 324 U.S. 229, 233 (1945))).[1] Although the district court's February 12, 2004 order of dismissal purported to be a final decision conclusively resolving the merits, it was not.

In the February 12 decision the district court dismissed this case because the court concluded that "all pending claims have become moot" as a result of its February 10, 2004 decision "*conditionally* approving a Settlement Agreement between the parties (including the intervenors) hereto." JA 1658 (emphasis added). The February 12 decision dismissing the case as moot is appealable because it terminated the action. But contrary to the district court's view, the February 10 decision did not render all claims in the action moot precisely because, as the district court observed, it approved the settlement agreement "conditionally," that is, only if "the preliminary injunction entered by [the Alabama district court] on October 15, 2003, is first vacated." 301 F. Supp. 2d at 35. Yet the contingency on which the court's approval hangs—vacatur of the preliminary injunction by the Alabama district court—while never certain, has now been shown to be remote. After oral argument in this case, the Alabama district court issued a memorandum opinion and order dated February 18, 2005 declining to dissolve the injunction and resolving to "move forward with an orderly, legal resolution" of the case before it. It is true that the Alabama court may yet decide to lift the preliminary injunction, as the appellees maintain. If so, the district court can then determine the validity of the settlement agreement and only then might the action become moot. *See Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 977 (D.C. Cir. 1991) ("A federal court lacks jurisdiction to consider the merits of claims that are deemed 'moot,' because

---

[1] Final decisions also include " 'a narrow class of decisions that do not terminate the litigation, but must, in the interest of "achieving a healthy legal system," nonetheless be treated as "final." ' " *Pueblo of Sandia*, 231 F.3d at 880 (quoting *Digital Equip. Corp.*, 511 U.S. at 867 (quoting *Cobbledick v. United States,* 309 U.S. 323, 326 (1940))).

'the judicial power extends only to cases or controversies.' A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting *Powell v. McCormack,* 395 U.S. 486, 496 & n.7 (1969)). Or the Alabama district court may leave the preliminary injunction in place indefinitely or replace it with a permanent injunction, thereby leaving the February 10 decision in legal limbo. In that event, Southeastern's claims would remain unresolved and, without the settlement agreement in effect, as Southeastern's counsel represented at oral argument, Southeastern would then pursue its claims against the Corps through trial if necessary. Thus, the district court's *conditional* approval of the settlement agreement did not render the action moot. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 465 n.3 (1978) ("In view of the tentative nature of the settlement, this case is not moot."); *British Int'l Ins. Co. v. Segura La Republica*, 354 F.3d 120, 123 (2d Cir. 2003) ("[W]here settlement is tentative, the underlying dispute is not moot.") (internal quotation omitted). Accordingly, the district court's final decision that declared otherwise is wrong and must be vacated.

This leaves us with the September 7, 2003 order denying the appellants' motion to abate the action and the February 10, 2004 order conditionally approving the settlement. With the February 12, 2004 dismissal vacated, these underlying orders are plainly not final. The appellants agree that the denial of a motion to abate is not a final order. *Cf. Gulfstream Aerospace Corps. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) ("district court's denial of a motion to stay litigation pending the resolution of a similar proceeding in state court" is not immediately appealable). And, as we have discussed, the conditional nature of the district court's approval of the settlement agreement means that the agreement will not be final unless and until the future action contemplated—the lifting of the Alabama court's injunction—takes place. *Cf. Castro County, Tex. v. Crespin*,

101 F.3d 121, 123 (D.C. Cir. 1996) (observing that dismissal order giving parties set period of time in which to reopen case should settlement talks fail was not final decision).[2]

For the foregoing reasons, the district court's February 12, 2004 dismissal order is vacated, the appeals of the November 7, 2003 and February 10, 2004 orders are dismissed for lack of jurisdiction and the case is remanded to the district court.

*So ordered.*

---

[2]Under these circumstances, a decision on appeal would be merely advisory, in derogation of our constitutional duty to decide only live cases or controversies. *See United States Nat'l Bank of Ore. v. Independent Ins. Agents of Am. Inc.*, 508 U.S. 439, 446, (1993) (" 'The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy,' and 'a federal court [lacks] the power to render advisory opinions.' " (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)); *James v. U.S. Dep't. of Health & Human Servs.*, 824 F.2d 1132, 1136 (D.C. Cir. 1987) ("Because we view the occurrence of these contingencies as unlikely, the declaration of rights which appellants seek would be an advisory opinion beyond our jurisdiction.").