# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Argued April 19, 2005         Decided June 17, 2005

No. 04-5204

JUDICIAL WATCH, INC.,
APPELLEE

v.

DEPARTMENT OF ENERGY, ET AL.,
APPELLANTS

―――――

Consolidated with
04-5205, 04-5206

―――――

Appeals from the United States District Court
for the District of Columbia
(No. 01cv00981)
(No. 01cv02545)
(No. 02cv01330)

―――――

Mark B. Stern, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, *Gregory G. Katsas*, Deputy Assistant Attorney General, and *Michael S. Raab*, *Douglas Hallward-Driemeier,* and *Lewis S. Yelin,* Attorneys.

*Sharon Buccino* and *James F. Peterson* argued the cause for appellees. With them on the brief were *Jon Devine, Howard M. Crystal*, *Eric R. Glitzenstein*, and *Paul J. Orfanedes*.

Before: GINSBURG, *Chief Judge*, and TATEL and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Eight federal agencies appeal from an order of the district court requiring them to search their records for, and to give the plaintiffs, certain documents related to the National Energy Policy Development Group (NEPDG). The district court rejected the agencies' claim that the documents come within Exemption 5 of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5), because they reflect the pre-decisional deliberations of the NEPDG. The district court also ordered each agency to search for and to disclose certain records created or maintained by agency employees who were paid by the agency while they were working for the NEPDG or another related task force.

We hold that, although the NEPDG was not itself an "agency" for purposes of the FOIA, the agencies lawfully withheld, pursuant to Exemption 5, documents bearing upon the deliberative processes of the NEPDG. We also hold that the records created or obtained by employees detailed from an agency to the NEPDG are not "agency records" subject to disclosure under the FOIA.

## I. Background

In 2001 Judicial Watch and the Natural Resources Defense Council, between them, sued the United States Departments of Agriculture, Commerce, Energy, the Interior, Transportation,

and the Treasury, the Environmental Protection Agency, the Federal Emergency Management Agency, and the Office of Management and Budget (since dismissed), alleging the defendant agencies violated the disclosure requirements of the FOIA by withholding agency records related to the NEPDG, which President George W. Bush had established earlier that year for the purpose of developing a "national energy policy designed to help the private sector, and government at all levels, promote dependable, affordable, and environmentally sound production and distribution of energy for the future."  Mem. Establishing the NEPDG, Jan. 29, 2001.  The plaintiffs sought a declaration that the agencies' failure to disclose the requested documents was unlawful and an order requiring them to make the documents available.

In its cross-motion for summary judgment, the Government argued the documents in question were protected from disclosure under Exemption 5 because they reflected the deliberations of the NEPDG.  The district court rejected that argument and ordered the Government to release the requested documents by June 1, 2004 "unless the agenc[ies] can demonstrate how each communication is both deliberative and predecisional of an *agency's own* decision." *Judicial Watch, Inc. v. Department of Energy*, 310 F. Supp. 2d 271, 316 (2004).  The court also ruled that the DOE and the DOI had failed adequately to search their records because they did not consider in their search any documents created by or maintained by agency employees while detailed to the NEPDG (or, with respect to one employee, while he was serving as his agency's representative on another energy-related task force).  *Id*. at 298–302.  The court directed each Department to conduct a new search and to disclose any non-exempt documents responsive to the plaintiffs' requests.  *Id*. at 331.  Upon the motion of the Government, the district court later stayed its order pending the outcome of this appeal.

## II. Analysis

We review the district court's decision on summary judgment *de novo*, which in a FOIA case means we must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not 'agency records' or are exempt from disclosure." *Assassination Archives and Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). In this case, the specific questions to be resolved are (1) whether Exemption 5 permits the defendant agencies to withhold documents pertaining not to their own deliberations but to those of the NEPDG, and (2) whether the records of agency employees who were detailed to the NEPDG are "agency records" subject to disclosure under the FOIA. Before turning to these issues, however, the court must address Judicial Watch's motion to dismiss this appeal on the ground that the district court has not issued a final order. *See* 28 U.S.C. § 1291.

Judicial Watch contends the order of the district court is not final because it does not actually require the agencies to disclose any records; they are required only to conduct a fresh review of their records and to raise such other objections, if any, as they may then have. As the Government reads the order, on the other hand, the agencies are required immediately (upon dissolution of the stay pending appeal) to disclose certain documents with respect to which the Government has no argument against disclosure apart from the Exemption 5 argument already rejected by the district court; therefore, the order is reviewable either as a final order, pursuant to 28 U.S.C. § 1291, or as an interlocutory injunctive order, pursuant 28 U.S.C. § 1292(a)(1).

In our view the order of the district court is not "final" because it does not fully resolve all the issues before that court, *see Southeast Fed. Power Customers v. Harvey*, 400 F.3d 1, 4 (D.C. Cir. 2005), but it is an appealable interlocutory order

insofar as it requires the disclosure of documents for which the agencies claim no basis for non-disclosure beyond the argument already rejected by the district court. That the agencies also must conduct a new search does not mean they may defer disclosure of the documents they have already located. The order is therefore injunctive in nature and, as such, appealable under § 1292(a)(1). *See Gulf Oil Co. v. Dep't of Energy*, 663 F.2d 296, 306 n. 70 (D.C. Cir. 1981) ("Mandatory orders affecting preliminary agency action have generally been held to be appealable as injunctions under § 1292(a)(1)"); *see also Miller v. Bell*, 661 F.2d 623, 625 (7th Cir. 1981) ("A disclosure order in a FOIA suit is injunctive in nature"). We therefore deny the motion to dismiss this appeal and proceed to the merits.

A.  Exemption 5 and the Deliberative Process Privilege

The FOIA requires an "agency" to make "agency records" available upon request unless it can show they come within one of the nine exemptions in the Act, *see* 5 U.S.C. § 552(a)(3), (b); *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996), which, in furtherance of the Congress's goal of open government, "have been consistently given a narrow compass." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989). The only Exemption at issue here is No. 5, which authorizes the non-disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than another agency in litigation with the agency." That means the Government may withhold a document if: (1) "its source [is] a Government agency," and (2) "it [falls] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

One of the privileges incorporated into Exemption 5 is the common-law "privilege regarding the government's deliberative process." *Bureau of Nat'l Affairs v. Dep't of Justice*, 742 F.2d 1484, 1496 (D.C. Cir. 1984). Its inclusion in the statute "reflect[s] the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997). To come within the purpose of the privilege, therefore, a document must be both "pre-decisional" and "deliberative," *see In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); and, by the terms of Exemption 5, it must also be an "inter-agency" or an "intra-agency" record. *See Klamath Water Users,* 532 U.S. at 9.

In this case the Government argues Exemption 5 and the deliberative process privilege authorize the agencies to withhold documents that would reveal the decision-making processes of the NEPDG. The district court rejected that argument, reasoning that because the NEPDG is not itself an "agency" within the meaning of the FOIA, *see* 5 U.S.C. § 552(f)(1), Exemption 5 does not protect its deliberations from disclosure. In the district court's view, then, the privilege would apply if the NEPDG were informing the agencies' decision-making processes, but not if the agencies were informing the decision-making processes of the NEPDG, as was in fact the case. *See* 310 F. Supp. 2d at 314–16.

We agree the NEPDG is not itself an "agency" subject to the FOIA because its sole function is to advise and assist the President. *See Meyer v. Bush*, 981 F.2d 1288, 1292 (D.C. Cir. 1993). The district court erred, however, in thinking that Exemption 5 therefore does not protect the deliberations of the NEPDG. Neither Exemption 5 nor the cases interpreting it

distinguish between the decision-making activities of an "agency" subject to the FOIA and those of the President and his staff, who are not subject to the FOIA. On the contrary, both the Supreme Court and this circuit have expressly refused to draw that distinction.

In *EPA v. Mink*, 410 U.S. 73, 85 (1973), the Supreme Court deemed it "beyond question" that documents prepared by agency officials to advise the President were within the coverage of Exemption 5 because they were "'intra-agency' or 'inter-agency' memoranda or 'letters' that were used in the decisionmaking processes of the Executive Branch." Similarly, in *Soucie v. David*, 448 F.2d 1067, 1078 (1971), we held that Exemption 5 shields "the decisional processes of the President [and] other executive officers with policy-making functions." And in *Bureau of National Affairs*, 742 F.2d at 1496–97, we held the Office of Management and Budget may properly withhold as "predecisional, deliberative interagency memoranda exempt from disclosure under 5 U.S.C. § 552(b)(5)" the EPA's budget recommendations, which the EPA submitted to the OMB and which the OMB then used to make its own recommendations to the President, because "the President, not the EPA, makes the final decision concerning what budget requests should be submitted to the Congress."

The Executive Branch officials who play important roles in the formulation of policy are not necessarily employed by an "agency" within the meaning of the FOIA; an employee in a unit of the Executive Office of the President engaged solely in advising the President is an obvious example. *See, e.g.*, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 157 (1980) ("the President's immediate staff or units in the Executive Office whose sole function is to advise and assist the President are not included within the term 'agency' under the FOIA"); *Rushforth v. Council of Economic Advisors*,

762 F.2d 1038, 1043 (D.C. Cir. 1985) (CEA not an "agency" under FOIA); *Meyer v. Bush*, 981 F.2d at 1289 (Task Force on Regulatory Relief, headed by then-Vice President Bush and composed of cabinet members, not an "agency" for purposes of FOIA). We are aware of no reason to believe — indeed, we think it inconceivable — the Congress intended Exemption 5 to protect the decision-making processes of the Executive Branch when the decision is to be made by "agency" officials subject to oversight by the President and not when the decision is to be made by the President himself and those same agency officials are acting in aid of his decision-making processes. As we explained almost 25 years ago in *Sierra Club v. Costle*, 657 F.2d 298 (1981), the unitary structure of the Executive Branch is one of its essential features:

> The court recognizes the basic need of the President and his White House staff to monitor the consistency of executive agency regulations with Administration policy. He and his White House advisors surely must be briefed fully and frequently about rules in the making, and their contributions to policymaking considered. The executive power under our Constitution, after all, is not shared—it rests exclusively with the President. The idea of a "plural executive," or a President with a council of state, was considered and rejected by the Constitutional Convention. Instead the Founders chose to risk the potential for tyranny inherent in placing power in one person, in order to gain the advantages of accountability fixed on a single source.

*Id*. at 405. *See* Christopher S. Yoo, Steven G. Calabresi, & Anthony J. Colangelo, *The Unitary Executive in the Modern Era, 1945–2004*, 90 Iowa L. Rev. 601, 730 (2005) (concluding "every President [during period studied] defended the unitariness of the executive branch").

Our interpretation of Exemption 5 is not inconsistent with its textual limitation to "intra-agency" or "inter-agency" communications, as the plaintiffs suggest. Rather, it follows from the principle, well established in this circuit, that a document need not be created by an agency or remain in the possession of the agency in order to qualify as "intra-agency." Consider, for instance, *Ryan v. Department of Justice*, 617 F.2d 781 (1980):

> When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an 'intra-agency' memorandum for purposes of determining the applicability of Exemption 5.

*Id*. at 790. Not to treat in the same way documents shared with or received from the NEPDG, a body established by the President solely to advise him, and composed entirely of federal officials, *see In re Cheney*, ___ F.3d ___, No. 02-5354, 2005 WL 1083346 (D.C. Cir. May 10, 2005), would be anomalous indeed.

That the President, rather than an agency, initiated the policy development process is of no moment; what matters is whether a document will expose the pre-decisional and deliberative processes of the Executive Branch. The district court, which did not evaluate the disputed documents in those terms, should do so upon remand, bearing in mind that the deliberative process privilege does not protect purely factual material contained in privileged documents if the disclosure of such information would not reveal the nature of the deliberations. *See EPA v. Mink*, 410 U.S. at 87–88.

B.    "Agency Records"

The FOIA requires disclosure only of "agency records," which are documents created or obtained by an agency and under the agency's control at the time the FOIA request is made. *See Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).   In this case the district court held that, because the DOE employees detailed to the NEPDG remained on the payroll of the DOE, the records they created or obtained while on detail were "agency records" of the DOE and hence subject to disclosure; the court therefore ordered the DOE to search the documents of the former detailees and to disclose any non-exempt portions thereof. *See Judicial Watch*, 310 F. Supp. 2d at 299.

Even if the detailees remained employees of the DOE, as the district court concluded, our holding in Part II.A, above, regarding Exemption 5 would still permit the DOE to withhold documents the detailees created or obtained insofar as their disclosure would reveal the deliberative processes of the NEPDG.  With respect to other documents the detailees created or obtained while on detail, the question remains whether the detailees were then DOE employees.  The district court assumed — and the Government does not disagree — that the DOE's duty to examine the records of the detailees and to disclose any non-exempt portions thereof turns upon whether the detailees were employees of the DOE or of the NEPDG when they created or obtained the documents.[*]

---

[*] If they were DOE employees, then the documents would have been created in the legitimate conduct of their official duties at the DOE, and it would be immaterial that the documents were and are located at the Office of the Vice President and were never integrated into the DOE's records system. *See Dep't of Justice v. Tax Analysts*, 492 U.S. at 145.

The Government argues that the district court, in finding that the detailees were employees of the DOE, relied too heavily upon the detailees having been paid out of funds appropriated for the use of the DOE. We agree. Although the district court acknowledged that, during their detail, the employees worked exclusively on NEPDG matters, were supervised by the Office of the Vice President, and did not occupy an office at the DOE, it appeared not to consider those factors in deciding whether the detailees remained DOE employees; instead the district court appeared to rely solely upon the agency having paid their salaries. 310 F. Supp. 2d at 298–99. *Cf. C.C. Eastern, Inc. v. NLRB*, 60 F.3d 855, 858–59 (D.C. Cir. 1995) (question whether worker is employee covered by the National Labor Relations Act or independent contractor outside the jurisdiction of the NLRB is resolved by reference to common law of agency, which in turn "requires an evaluation of all the circumstances surrounding the relationship between the company and the worker"); *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979) (holding "no one factor is determinative" of whether individual is employee or independent contractor for purposes of Title VII).

Agencies routinely detail employees to the White House for a limited time or a specific task, and it is not for a court to burden that practice when not under statutory compulsion. *Cf. Johnson v. Executive Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA ... is hardly an area in which the court should attempt to micro manage the executive branch"); *Sierra Club v. Costle*, 657 F.2d at 405; *see also Cheney v. U.S. Dist. Court*, ___ U.S. ___, 124 S. Ct. 2576, 2581 (2004) ("special considerations control when the Executive Branch's interest in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated"). Seeing that the records the plaintiffs seek would not be "agency records" subject to the FOIA if the NEPDG had temporarily

hired the employees away from the DOE, we see no reason the NEPDG should be made effectively subject to the FOIA because it borrowed, rather than hired, some of its staff. Nor is there evidence — nor indeed any claim by the plaintiffs — the DOE used the detail procedure in order to circumvent the disclosure requirements of the FOIA.

We reject the plaintiffs' suggestion that there is something to be gleaned from the statutory provision allocating the responsibility for paying the salaries of the detailees. Section 112, 3 U.S.C. requires the office to which an employee has been detailed to reimburse the detailing office for the detailees' pay insofar as the detail exceeds 180 days in a fiscal year. The plaintiffs point out that some of the detailees from the DOE worked for the NEPDG but were paid by the DOE for more than 180 days in FY 2001, from which they would have us infer the detailees remained DOE employees. In our view, however, § 112 does not bear at all upon the question before us. At most the plaintiffs' argument suggests the DOE should have stopped paying the detailees' salaries, but that does not cast doubt upon our conclusion that, given the surrounding circumstances, the employees were not "agency employees" during the time they worked for the NEPDG.

Because the circumstances amply support the DOE's assertion that the detailees were as a practical matter employees of the NEPDG, and not of the agency, it follows that the records those employees created or obtained while on detail were those of the NEPDG, not those of the DOE, and hence not "agency records" within the meaning of the FOIA. The district court therefore erred in ordering the Government to search the records of the detailees.

The records of Ronald Montagna, a DOI employee who served as his agency's representative on the White House Task

Force on Energy Project Streamlining, present a different issue. The Streamlining Task Force was, according to an affidavit the Government submitted in this case, established pursuant to an executive order "to work with and monitor federal agencies' efforts to expedite their review of permits or similar actions, as necessary, to accelerate the completion of energy-related projects, while maintaining safety, public health, and environmental protections."

The Government concedes that "at all times during his ... assignment to the [Streamlining Task Force], each agency representative remain[ed] an employee of his ... agency and remain[ed] subject to the authorities and requirements" of that agency. The Government argues, nonetheless, that documents created or obtained by Montagna are not records of the DOI because they are not in its possession but, rather, in the possession of the Council on Environmental Quality. As the district court correctly observed, however, possession is not the proper test of whether a record is within an agency's control. *See* 310 F. Supp. 2d at 302 (quoting *Ryan v. Dep't of Justice*, 617 F.2d at 785). It is undisputed that Montagna created or obtained the documents "in the legitimate conduct of [his] official duties" at the DOI, *see Dep't of Justice v. Tax Analysts*, 492 U.S. at 145, and the Government does not suggest the DOI lacks either authority over, or the ability to retrieve, the documents. They are therefore within the DOI's control for purposes of the FOIA, and we affirm the order of the district court insofar as it directed the DOI to examine and to disclose the non-exempt portions of Montagna's records.

## III. Conclusion

We hold the defendant agencies may properly withhold from disclosure, pursuant to Exemption 5, documents that would reveal the deliberative processes of the NEPDG; and the DOE

need not search the records of DOE employees who were detailed to the NEPDG, as those records are not "agency records" within the meaning of the FOIA. The district court correctly determined the DOI must disclose the non-exempt documents of Ronald Montagna. The order of the district court granting partial summary judgment to the plaintiffs is therefore affirmed in part and reversed in part and the case is remanded to the district court for further proceedings consistent with this opinion.

*So ordered.*